IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| VICKI D. MORGAN, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 1:08-CV-1569-KOB |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
|     Defendant. ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The claimant, Vicki D. Morgan, brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for Social Security Disability Insurance ("SSDI") benefits.

On July 13, 2004, the claimant filed an application for SSDI benefits under Title II of the Social Security Act. The claimant alleged that she had been disabled since June 24, 2004, primarily because of severe anxiety and also pain. The Social Security Administration initially denied the claimant's application, and the claimant appealed for a hearing before the Administrative Law Judge, which occurred on March 20, 2007. The ALJ denied the claimant's application on June 26, 2007. On June 28, 2007, the claimant appealed to the SSA Appeals Council, which denied the claimant's request for review. This denial rendered the ALJ's opinion the Commissioner's final decision. Thus, this case is now ripe for review pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II. Issue Presented

Whether the ALJ failed to give substantial weight to the opinion of the plaintiff's treating physician, Dr. Jett.

## III. Standard of Review

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his or her factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. The Commissioner's factual determinations, however, are not reviewed *de novo*, but are affirmed if supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but the court must also view the record in its entirety and take account of evidence that detracts from the evidence upon which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

### IV. Legal Standard

A person is entitled to disability benefits when he or she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period if not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently employed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal on of the specific impairments as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner may reject any medical opinion if the evidence supports a contrary finding. *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Additionally, the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Eleventh Circuit has found "good cause" to discount a treating physician's opinion exists where the physician's opinion was not bolstered by the evidence or the evidence

supported a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *Sharfarz v. Bowen*, 825 F.2d 278, 280-81 (11th Cir. 1987). The Eleventh Circuit has also found "good cause" where the treating physician's opinions were wholly conclusory or inconsistent with his own medical records. *See Jones v. Dep't of Health & Human Serv.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Crawford v. Comm'r,* 363 F.3d 1155, 1160 (11th Cir. 2004). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Because the claimant alleges that one of her disabling conditions is pain**,** the ALJ is to apply the Eleventh Circuit pain standard in determining if the claimant is disabled by pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The pain standard requires:

> (1) evidence of an underlying medical condition and either
> (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition; or,
> (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* While a reversal is warranted if the ALJ's decision contains no evidence of the proper application of the three-part pain standard, the ALJ does not have to recite the pain standard word-for-word. *Id*. Instead, the ALJ may make findings that indicate that he applied the standard. *Id.*

## V. Facts

The claimant has a high school education and was fifty-three years old on June 26, 2007, when the ALJ issued the hearing decision. (R. 17). Her past work experience includes employment as a dishwasher and janitor. (R. 165, 338-39). The claimant alleges that she became

disabled on June 24, 2004, because of anxiety and also pain. (R. 329-33).  At the hearing, the VE testified that the claimant's former jobs were medium, unskilled work.  (R. 339).

      On June 17, 2004, Dr. Kishin M. Gehi, M.D., a general practitioner, treated the claimant for musculoskeletal strain in her back.  (R. 18, 104).  Dr. Gehi prescribed the claimant Flexeril, a muscle relaxant, and limited her lifting to no more than 25 pounds.  (R. 19).  The claimant returned to Dr. Gehi on June 24, 2004, the alleged onset date of her disability, and reported that her back pain was "much improved."  (R. 19).  However, the claimant reported that she had "a lot of anxiety and stress."  (R. 104).  Dr. Gehi released her to return to "regular duty" work with no restrictions.  (R. 19).  Also on June 24, 2004, the claimant told her treating physician, Stanley Jett, M.D., a general practitioner, that her "nerves were shot" because of stress at work.  (R. 178-79).  Dr. Jett prescribed for the claimant BuSpar, an anti-anxiety drug.  (R. 178-79).

      On September 8, 2004, the claimant presented to Robert Storjohann, Ph.D., a psychologist, for a psychological evaluation at the request of the Social Security Administration. (R. 19, 165-67).  The claimant reported that she had depression and generalized anxiety for several months due to pressure at work.  (R. 19, 166).  The claimant reported that her activities included doing housework and laundry, watching television, attending church regularly, and reading romance novels occasionally.  (R. 167).  In evaluating the claimant's concentration and attention, Dr. Storjohann observed that the claimant was able to perform simple math calculations, count backwards from 20 to 1, and spell the word "world" backwards.  (R. 167). The claimant's memory was intact, and her thoughts and speech were logical and goal-directed. (R. 167).  Dr. Storjohann concluded that the claimant was able to make acceptable work decisions and manage her financial affairs, and diagnosed the claimant as having an adjustment

5

disorder with mixed anxiety and dependent personality disorder and depressed mood. (19, 167).

Dr. Storjohann found that the claimant's GAF score was 55, and concluded:

> Based on the results of this evaluation, [claimant] appears to have mild deficits in her ability to understand, carry out, and remember instructions in a work setting. She appears to have moderate deficits in her ability to respond appropriately to supervision, co-workers, and work pressures in a work setting.

(R. 19, 167).

In October 2004, the claimant reported to Dr. Jett that the BuSpar was helping her anxiety somewhat, but that she was still depressed. (R. 174-75). Dr. Jett replaced the BuSpar with Zoloft, an antidepressant. (R. 174). In November 2004, the claimant reported that the Zoloft had helped, and Dr. Jett found that her affect was much better. (R. 172-73). In May 2005, Dr. Jett noted that the Zoloft was working pretty well and that the claimant was less depressed. (R. 280, 282). Dr. Jett also saw the claimant for checkups of her diabetes every few months in 2005, and saw the claimant occasionally for sinus and respiratory ailments over the course of the year, but he did not prescribe any additional medications for those ailments. (R. 170-71, 266-68).

In March 2006, Dr. Jett reported that the claimant had occasional diarrhea, right shoulder pain, and pain in her neck. (R. 259, 262). At that time, Dr. Jett told the claimant to take Motrin for pain, and continued her medications for diabetes and depression. (R. 259). In May 2006, Dr. Jett increased the claimant's Zoloft prescription. (R. 260-61). In June 2006, the claimant reported that she was much less depressed and was exercising regularly. (R. 250, 257). Dr. Jett treated the claimant for sore throat and sinus symptoms in July and August 2006. (R. 255-56).

On August 29, 2006, Morton Rickless, M.D., an orthopedic surgeon, performed a

consultative physical examination of the claimant at the request of the Social Security Administration. (R. 19, 238-42). The claimant told Dr. Rickless that her primary problems were anxiety and depression, but reported that she also had diabetes, a history of hypertension, and lower back pain. (R. 20, 239). The claimant denied having any headaches, blackouts, or dizzy spells. (R. 20, 239). Dr. Rickless reported no evidence of deformity, muscle spasm, or limited range of motion in the claimant's back. (R. 20, 238). The claimant had good use of both hands and retained good muscle strength in her upper and lower extremities with no limitation of motion. (R. 20, 238-39). Dr. Rickless concluded that the claimant's primary problem was psychological, not physical, in nature. (R. 21, 239). In a Medical Source Opinion, Dr. Rickless reported that the claimant had no limitations on sitting, standing, and walking, and could lift up to 20 pounds frequently and 30 pounds occasionally, and had no postural limitations or significant environmental limitations. (R. 21, 240-42).

In October 2006, the claimant reported to Dr. Jett that her ears hurt and that she had pain in her bones. (R. 244). Dr. Jett found that the claimant was in poor physical condition, and recommended that she walk daily. (R. 245). The claimant returned to Dr. Jett on December 13, 2006, for blood work and a physical capacity assessment. (R. 246). The claimant told Dr. Jett that she was unable to work because of her nerves, and that she continued to have episodes of depression and occasional diarrhea. (R. 246). Dr. Jett completed a "Non-Exertional Factors Affecting Your Patient" form for the claimant, in which he indicated that the claimant had chronic, continuous, moderately severe pain due to diabetic neuropathy, and that the claimant required occasional rest periods. (R. 248). Dr. Jett opined that the claimant would miss three or more days of work each month. (R. 248). The record before the ALJ also contained an updated

form from Dr. Jett that indicated that the claimant was disabled by diabetes mellitus and severe anxiety and depression. (R. 237).

On May 5, 2007, Sally Gordon, Psy.D., a psychologist, conducted a psychological evaluation of the claimant. (R. 22, 287-292). Upon examination, Dr. Gordon found that the claimant had no difficulty comprehending questions and test instructions, and responded with coherent answers in sufficient detail. (R. 288). The claimant's affect was sad, but she denied suicidal or homicidal intention. (R. 288). The claimant was oriented, alert, and able to attend to the demands of the interview without difficulty. (R. 288). The claimant could repeat a complex sentence, execute a three-stage command, and learn four words in a single trial. (R. 288). The claimant's memory appeared to be intact, and testing indicated that her level of intellectual functioning was in the mildly impaired range. (R. 289). The claimant reported activities that included housecleaning chores, cooking, laundry, shopping, reading, watching television, listening to music, and attending church. (R. 289). Dr. Gordon diagnosed the claimant as having a major depressive disorder, moderate generalized anxiety disorder, and panic disorder without agoraphobia. (R. 289). The claimant's GAF score was 65, and on the Medical Source Opinion Form ("Mental"), Dr. Gordon reported that the claimant had no more than mild limitations in every area except dealing with changes in a work setting, which was moderately limited. (R. 291-92).

At the hearing on March 20, 2007, the claimant testified that she stopped working on June 24, 2004, because of her nerves. (R. 329). The claimant reported having heart palpitations and gastrointestinal symptoms because of stress from her job. (R. 329-330). The claimant said that she continued to have problems with stress even after she stopped working. (R. 330). The

claimant said that she took Zoloft for anxiety and depression, which was prescribed to her by Dr. Jett after she stopped working. (R. 334). The claimant reported doing "fair" on Zoloft, but said that she still had occasional anxiety. (R. 334). The claimant testified that her activities included washing dishes, going with her husband to buy groceries, cooking, and helping with the housework and laundry. (R. 332, 338). The claimant said that she avoids big crowds because they make her nervous, and has problems with concentration and memory. (R. 333). The claimant testified that she sees friends about once a week, attends church every Sunday, and participates in some church functions. (R. 335-336). She said that she spends most of her time reading and watching television, and sometimes goes for walks. (R. 334-35, 337-38).

       The ALJ found that the claimant has not engaged in substantial gainful activity since the alleged onset of disability. (R. 25). He also found that the claimant's anxiety is severe, but does not meet the listing requirements. (R. 26). He noted that the claimant is unable to perform her past relevant work, but also determined that she retains the residual functional capacity ("RFC") to perform light work with simple 1-2-3 tasks, but no complex tasks. *Id*. The ALJ also determined that the claimant can maintain attention and concentration for two hours at a time, and complete an eight-hour day with customary breaks. *Id*. The ALJ further determined that the claimant's contact with the general public, co-workers, and supervisors should be casual, that supervision should be non-confrontational, and that changes to the work setting should be gradual and well explained, and the claimant may need additional time to adjust. *Id*.

       At the hearing, a vocational expert (VE) identified jobs that would be compatible with the claimant's RFC. (R. 25). The VE testified that the claimant could work as a garment sorter, shirt presser, off bearer, and small products assembler. (R. 25). Therefore, the ALJ found that the

9

claimant was not disabled as defined in the Social Security Act. (20 C.F.R. § 404.1520(g)).

After the hearing decision was issued in June 2007, the claimant submitted additional evidence to the Appeals Council in March and April 2008. The new evidence included a "Non-exertional Factors Affecting Your Patient" form, a Physical Capacities Evaluation ("PCE"), and additional treatment records from Dr. Jett. (R. 294, 295-96, 307-316). The claimant also submitted treatment records from the Kirklin Clinic dated March 15 to November 9, 2007, and records from UAB Gastroenterology dated March 18 - April 7, 2008 (R. 298-306, 318-324). The Appeals Council considered the new evidence and found that it did not provide a basis for changing the ALJ's decision. (R. 6-7). Therefore, the Appeals Council denied the claimant's request for review of the hearing decision. (R. 6-8).

## VI. Discussion

The claimant's only argument is that the ALJ's determination that she is not disabled was against the weight of the evidence. Specifically, she alleges that the ALJ erred by not giving substantial weight to the opinion of her treating physician, Dr. Jett, and that the ALJ instead afforded greater weight to examining physicians' and Dr. Gehi's opinions.

The ALJ has a duty to consider and carefully weigh each claim and examine all the evidence before him. *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996). The claimant has the burden of establishing disability, and if the claimant does not provide enough evidence to show that she is disabled, she is not entitled to benefits. 20 C.F.R § 404.1512. The ALJ found that the claimant did not meet her burden of establishing that she was disabled due to either anxiety or pain. (R. 23). Specifically, he found that the medical evidence did not support her

claim based on either anxiety or pain.

The claimant is correct that an ALJ is required to give a treating physician's opinion substantial weight. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). However, an ALJ does not err if, with good cause, he explains why he gives a treating physician's opinion little or no weight. *Jones*, 810 F.2d at 1005. Good cause to dismiss a treating physician's opinion exists where the physician's opinion was not bolstered by the evidence, or the evidence supported a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *Sharfarz v. Bowen*, 825 F.2d 278, 280-81 (11th Cir. 1987).

The ALJ's opinion shows that he did consider Dr. Jett's findings and opinions, and that he examined Dr. Jett's records in detail. (R. 23). The ALJ determined that Dr. Jett's opinion as to the claimant's anxiety and nerves is "unsupported by medical evidence and is conclusory." (R. 23). In addition, the ALJ found that Dr. Jett's opinion "is conclusively countered by the opinions of Drs. Storjohann and Gordon who reported no more than mild to moderate psychologically-based limitations." *Id*.

The court must determine whether the ALJ's stated reasons for rejecting Dr. Jett's opinion constitute good cause. The ALJ identified the conflict between Dr. Jett's findings on one hand, and the findings of Drs. Gordon and Storjohann on the other. While the records of Dr. Jett, Dr. Gordon, and Dr. Storjohann all show that the claimant does suffer from anxiety, those records conflict in their determination of the severity of the anxiety and its effect on her ability to work. Drs. Storjohann and Gordon concluded that the claimant can work with some limitations, despite her anxiety. (R. 165-167, 291-292). Dr. Jett, on the other hand, found that the claimant

is too anxious to work. (R. 237). Where medical opinions are in conflict, the ALJ cannot give great weight to each. Again, the ALJ found that Drs. Gordon and Storjohann's opinions "conclusively counter" Dr. Jett's opinion as to the claimant's allegation of anxiety, and he found Dr. Jett's opinion "conclusory." (R. 23). The ALJ's decision to discount Dr. Jett's opinion is supported by substantial evidence in the form of the opinions of Drs. Gordon and Storjohann and, therefore, the ALJ had good cause to discount Dr. Jett's opinion. Accordingly, the ALJ did not err.

The court notes that Dr. Jett is a general practitioner, while Drs. Gordon and Storjohann are mental health specialists. The opinion of a specialist as to issues related to his or her specialty should be afforded more weight than the opinions of a nonspecialist on such issues. *See* 20 C.F.R. § 404.1527(d)(5). Dr. Jett actually treated the claimant's anxiety and depression, but he is not a specialist. Even though Drs. Gordon and Storjohann are examining doctors, they have special expertise in the mental health arena, so their opinions as to anxiety and depression carry greater weight than Dr. Jett's, at least as to the mental health issues. The fact that Drs. Gordon and Storjohann specialize in treating mental health are all the more reason to favor their medical opinion over that of the nonspecialist Dr. Jett. Because substantial evidence exists in the form of the opinions of Drs. Gordon and Storjohann to support the ALJ's finding that the claimant can work with restrictions despite her anxiety and depression issues, the ALJ did not err in making that finding.

Though the claimant's primary allegation is that she is mentally disabled, she also alleges that she suffers from disabling pain. The ALJ found that the claimant did not meet her burden of establishing that she was disabled by pain. (R. 23). When a claimant alleges disabling pain, an

ALJ must apply the pain standard to determine if this allegation is supported by substantial evidence. *Holt*, 921 F.2d at 1223.  The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Id*.  While a reversal is warranted if the ALJ's decision contains no evidence of the proper application of the three-part pain standard, the ALJ does not have to recite the pain standard word-for-word. *Id*.  Instead, the ALJ may make findings that indicate that the standard was applied. *Id.*

The ALJ's opinion reflects that he properly applied the pain standard.  (R. 23).  He noted that the claimant has not met her burden of showing that her alleged pain is severe enough to meet the elements of the pain standard. *Id.*  The ALJ opined that "[t]he record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of limitations alleged," and that "[t]here are no studies to show abnormalities that could be expected to produce such severe symptoms." *Id.*  In other words, the claimant did not allege substantial evidence to meet either the second or the third element.  The medical records corroborate the ALJ's finding that the claimant does not suffer from disabling pain.  For instance, records from Drs. Gehi and Rickless show that the claimant was able to work after her back strain and that she was not in disabling pain, and the ALJ noted these doctors' opinions in reaching his decision. *Id*.

More specifically, the medical records show that the claimant complained of back pain to Drs. Gehi and Jett in June 2004 and to Dr. Rickless in August 2006 (R. 104, 239, 249); of neck and shoulder pain to Dr. Jett in March 2006 (R. 259); and of bone pain to Dr. Jett in October

13

2006 (R. 244). She initially presented to Dr. Gehi after she strained her back, and after medication, she was better within a week and was released to regular work duty. (R.104). Dr. Jett prescribed Motrin for the neck and shoulder pain, and no record exists of her returning to any doctor on that particular complaint. (R. 259).

Dr. Rickless completed a work fitness evaluation on the claimant in August 2006. After finding that she exhibited no evidence of muscle spasm, deformity, or limited range of motion, he concluded that her primary problem was psychological, not physical. (R. 238-239). He further concluded that the claimant had no limitations in walking, sitting, or standing, could lift twenty pounds frequently and thirty pounds on occasion, and that she had no postural limitations. (R. 240-42). None of these findings reflects that the claimant suffered from back pain or other pain at all, much less pain that would disable her and keep her from working. As the ALJ noted, Dr. Gehi's releasing the patient to full work duty following her back strain corroborates Dr. Rickless's findings. (R. 23).

The court notes that none of the other doctors' findings conflicts with Dr. Rickless's assessment regarding physical capacity for work. In fact, no doctor found that the claimant is in chronic pain or suffers from disabling pain. Of further significance is the fact that when Dr. Jett filled out the claimant's disability determination form, he only listed diabetes and anxiety/depression, not pain. (R. 237). Because the record shows no conflict with Dr. Rickless's work fitness assessment and no physician opines that the claimant is disabled by pain, substantial evidence supports the ALJ's determination that the claimant's pain was not disabling and that she did not meet her evidentiary burden in showing that her pain approached the pain standard. Therefore, the ALJ did not err in making his determinations as to the claimant's pain allegation.

## VII. Conclusion

For the reasons stated, the court AFFIRMS the Commissioner's decision. The court will enter a separate Order consistent with this opinion.

Dated this 3rd day of August, 2009.

*Karon O. Bowdre*
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE